DA 08-0162

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2009 MT 76

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

GAIL LENA STRIPLIN,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 2003-164
Honorable James A. Haynes, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          David Stenerson, Office of the State Public Defender, Hamilton, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General, Tammy K. Plubell,
Assistant Attorney General, Mark Lancaster, Legal Intern, Helena,
Montana

          George H. Corn, Ravalli County Attorney, Hamilton, Montana

                Submitted on Briefs:  January 7, 2009

                       Decided:  March 17, 2009

Filed:

           _____
                      Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    Gail Striplin appeals an order of the District Court for the Twenty-First Judicial District, Ravalli County, revoking her suspended sentence on the grounds that Striplin failed to pay restitution. We affirm in part, reverse in part and remand with instructions.

¶2    We address the following issues on appeal:

¶3    1. Whether the District Court abused its discretion in revoking Striplin's suspended sentence based upon her failure to pay restitution.

¶4    2. Whether the District Court erred in sentencing Striplin to serve thirty days in jail as a condition of her sentence.

## Factual and Procedural Background

¶5    In October 2003, the State charged Striplin by Information with two felony counts of Deceptive Practices in violation of § 45-6-317(1)(d)(i), MCA (2001), for making unauthorized charges to the credit card of her fiancé's mother, Edith Poulsen, and for making a false credit card application in Poulsen's name. The Information indicated that both offenses occurred "during the year 2002." Striplin reached a plea agreement with the State in which she agreed to plead guilty to both counts in exchange for the State recommending a deferred imposition of sentence. Striplin subsequently pled guilty to the charges and agreed to pay full restitution "to the victim and/or her credit card accounts."

¶6    Because Striplin had received a deferred sentence some years earlier for a crime committed in another state, the District Court sentenced Striplin to a five-year suspended sentence on each count rather than a deferred sentence. These sentences were to run concurrently and were subject to certain terms and conditions, such as requiring Striplin

2

to find employment and to pay full restitution to the Department of Corrections (DOC) who would then distribute the restitution amounts to the credit card companies.

¶7 Striplin's counsel asserted at the sentencing hearing that Striplin represented to him that a significant portion of the debt had already been paid. Apparently, prior to sentencing, Striplin had transferred a diamond ring to Poulsen as payment on the debt. Upon the sale of the ring, and due to the fact that the credit cards had "cleared," Poulsen declared that the debt had been satisfied. Striplin never made a payment to DOC, as ordered by the court, or to the credit card companies, nor did she ever contact the credit card companies to see if the debts had in fact been paid.

¶8 Three years after sentencing, Striplin's probation officer reported that Striplin had violated the terms of her suspended sentences. Thus, on July 5, 2007, the State petitioned to revoke Striplin's suspended sentences on the grounds that Striplin failed to fulfill her restitution obligation and that she failed to seek and maintain employment.

¶9 At the October 18, 2007 hearing on the State's petition to revoke, Striplin argued that transferring the diamond ring to Poulsen had satisfied her restitution obligation. The State pointed out, however, that Striplin owed restitution to the credit card companies, not to Poulsen. The court postponed its final determination on revocation pending the receipt of information from Poulsen's credit card companies regarding the status of the accounts in question.

¶10 The hearing recommenced on March 6, 2008, at which time Striplin's counsel stated that the credit card companies had not been paid and that they, instead, had written off their losses. Striplin admitted that she had not paid any money to the DOC or to the

3

credit card companies, but she explained that she had assumed that the proceeds from the sale of the ring had satisfied her restitution obligations. It appears from the record that, unbeknownst to Striplin, Poulsen had used the proceeds from the sale of the ring to satisfy other debts unrelated to this action. Striplin's counsel introduced evidence from various sources that Striplin was unable to work and, therefore, unable to pay restitution.

¶11 The District Court determined that Striplin violated the terms of her probation when she failed to pay restitution as ordered, thus the court revoked her original suspended sentences and resentenced her to five years suspended for each of the original counts, to run concurrently. The court did not reimpose a condition that Striplin pay restitution as the court found that she did not have the ability to pay. Instead, the court sentenced her to serve thirty days in jail. The court reasoned that Striplin had misrepresented to the court in 2004 her ability to work and to pay restitution expressly to avoid a harsher sentence that the court would otherwise have imposed.

¶12 Striplin's counsel moved the court to suspend the commitment to the county jail pending appeal, but the court denied the motion and ordered Striplin taken immediately to the detention center. The following day, on Striplin's renewed motion, the court ordered a stay of execution of her commitment to the county jail pending appeal. Striplin now appeals the District Court's judgment and sentence.

**Standard of Review**

¶13 This Court clarified its standard of review for criminal sentences in *State v. Herd*, 2004 MT 85, 320 Mont. 490, 87 P.3d 1017. There, we held that if the offender is eligible for sentence review, we will review the sentence for legality only. *Herd*, ¶ 22. If,

4

however, the offender is statutorily ineligible for sentence review, then we will utilize the two-tiered approach which we employed prior to the creation of the Sentence Review Division (SRD), i.e., we will review such sentences for both legality and abuse of discretion. *Herd*, ¶ 22.

¶14 Section 46-18-903, MCA, provides that a person sentenced to a term of one year or more in the state prison or to the custody of the DOC, is eligible for sentence review before the SRD. In the instant case, Striplin was sentenced to five years with the DOC on each count, with all five years suspended. Consequently, because Striplin is eligible for sentence review, we review her sentence for legality. On that basis, we determine whether the sentencing court had statutory authority to impose the sentence, whether the sentence falls within the parameters set by the applicable sentencing statutes, and whether the court adhered to the affirmative mandates of the applicable sentencing statutes. *State v. White*, 2008 MT 464, ¶ 12, 348 Mont. 196, 199 P.3d 274 (citing *State v. Stephenson*, 2008 MT 64, ¶ 15, 342 Mont. 60, 179 P.3d 502).

¶15 In addition, we review a district court's decision to revoke a deferred or suspended sentence by determining whether the court abused its discretion. *State v. Martinez*, 2008 MT 233, ¶ 15, 344 Mont. 394, 188 P.3d 1034 (citing *State v. Senn*, 2003 MT 52, ¶ 19, 314 Mont. 348, 66 P.3d 288). " 'Even a single violation of the terms and conditions of a suspended sentence is sufficient to support a district court's revocation of that sentence.' " *Martinez*, ¶ 15 (quoting *State v. Rudolph*, 2005 MT 41, ¶ 13, 326 Mont. 132, 107 P.3d 496).

**Issue 1.**

5

¶16 *Whether the District Court abused its discretion in revoking Striplin's suspended sentence based upon her failure to pay restitution.*

¶17 Because the District Court determined that Striplin does not have the ability to pay restitution and, thus, did not reimpose that condition as part of her amended sentence, Striplin argues that the District Court erred in revoking her suspended sentence based on her failure to pay restitution. She contends, in effect, that because the court did not make a determination of her financial resources and future ability to pay restitution at the time of her original sentence in 2004 as required by § 46-18-242(1)(a), MCA (2001) (the statute in effect at the time the offenses were committed), the condition of her 2004 sentence requiring her to pay restitution was illegal and her sentence cannot now be revoked based on the violation of that illegal condition.

¶18 The State maintains on the other hand that the 2003 version of the statute governs in this case and that version of the statute only required that a presentence investigation make "a list of the offender's assets." Section 46-18-242(1)(a), MCA (2003). In support of this argument, the State points out that when the Legislature amended § 46-18-242, MCA, in 2003, it provided that the amendment would apply retroactively to offenders who had an unpaid restitution obligation as of October 1, 2003, the effective date of the amendment. *See* 2003 Mont. Laws, chapter 272, § 10.

¶19 It is not necessary that we determine here which version of § 46-18-242, MCA, applies in this case because Striplin may not, within the context of this revocation proceeding, challenge the legality of the conditions imposed in her 2004 sentence, as such a challenge is untimely. *White*, ¶ 20 (citing *State v. Muhammad*, 2002 MT 47, ¶ 22,

6

309 Mont. 1, 43 P.3d 318). Rather, Striplin may challenge only the legality of the conditions imposed in her 2008 sentence.

¶20 As to the revocation of Striplin's sentence for failure to pay restitution, the 2004 Judgment indicated that Striplin was to pay restitution to the DOC and that the DOC would then distribute the funds to the two credit card companies as the funds were collected. The condition of the 2004 Judgment specifically requiring her to pay restitution provided:

> The Defendant shall pay restitution in the amount of $6,845.78, to bear interest at 10% per annum from the date of Judgment, plus a 10% restitution supervision fee as allowed by law. If any of this amount has been repaid, it is Defendant's responsibility to obtain documentation from the victim showing amounts paid and remitting that documentation to the Department of Corrections for their records.

¶21 Striplin admitted at the 2007 and 2008 adjudicatory hearings on the State's petition to revoke that she did not make any payments to the DOC. Instead, she claimed that she had given Poulsen a diamond ring and that the proceeds from the sale of that ring satisfied her restitution obligation. However, Poulsen was not the victim in this case. Rather, the District Court made clear at Striplin's 2004 sentencing hearing that the two credit card companies were actually the victims of her criminal offenses and restitution was owed to them.

> THE COURT: The Court will impose the restitution amounts that it sees reported in the Pre-Sentence Investigation Report. That's $4,694.34 to – It's not clear, but I imagine the parties know which credit card company. It looks like it's Discover credit card company. As well as the additional amount of restitution of $2,151.41, which, again, the way I read this I think it's to Discover credit card. But whoever it is, you shall make both of those payments.

7

Now, typically restitution payments are made to what? The Department of Institutions?

COURTROOM CLERK: Department of Corrections.

THE COURT: Department of Corrections. So if some of these payments have already been made directly to the credit card company – And I'm telling you this [defense counsel]. The DOC is going to get my judgment that says your client owes about $6,700, and they'll be looking for $6,700. So you're going to have to inform them of the amounts and may have to get some letter from the victim that that amount has been paid, just so the records are clear.

¶22    Furthermore, the evidence introduced at the revocation hearings indicated that Striplin never made any attempt to contact the credit card companies to determine whether they had been paid. As noted above, " '[e]ven a single violation of the terms and conditions of a suspended sentence is sufficient to support a district court's revocation of that sentence.' " *Martinez*, ¶ 15 (quoting *Rudolph*, ¶ 13).

¶23    Because Striplin never made any payments to the DOC as ordered by the court, nor did she at any time contact the credit card companies to make sure they had been paid, also as ordered by the court, we hold that the District Court did not abuse its discretion in revoking Striplin's suspended sentence based upon her failure to pay restitution.

**Issue 2.**

¶24    *Whether the District Court erred in sentencing Striplin to serve thirty days in jail* *as*    *a condition of her sentence.*

¶25    After revoking Striplin's suspended sentences, the District Court again sentenced Striplin to five years with the DOC on each count, with all five years suspended. The court also reimposed all of the terms and conditions of her prior sentences except the obligation to pay restitution. Instead, the court found that Striplin did not have the ability

8

to pay any restitution, fines, fees or surcharges, thus, as an additional condition, the court sentenced Striplin to thirty days in the Ravalli County Detention Center.

¶26 Striplin argues on appeal that the imposition of this thirty-day jail term is illegal because the District Court also reimposed the full five years on each count thereby increasing her sentence from the original sentence. Striplin also argues that the thirty-day jail term is illegal because it is contrary to Montana law regarding the imposition of incarceration when a defendant cannot pay fines, fees or restitution.

¶27 The State argues on the other hand that § 46-18-203(7)(a)(iii), MCA (2003), allows a court, at its discretion, to "revoke the suspension of sentence and require the offender to serve either the sentence imposed or any sentence that could have been imposed that does not include a longer imprisonment or commitment term than the original sentence . . . ." The State thus argues that the District Court "clearly meant" the thirty-day jail term to be included within the five-year span of the suspended sentences and not in addition to the five-year suspended sentences. However, the State has not provided any support for this argument.

¶28 The State also incorrectly argues that § 46-18-203(7)(a)(ii), MCA, provides that the court had specific authority to amend or add to the terms and conditions of Striplin's suspended sentence. On the contrary, § 46-18-203(7)(a)(ii), MCA, provides that the judge may "*continue* the suspended sentence with modified or additional terms and conditions (emphasis added)." In this case, the court *revoked* Striplin's suspended sentence, it did not *continue* that sentence. Consequently, the correct subsection of the statute to apply is subsection (7)(a)(iii). The actual question here is which version of

9

§ 46-18-203(7)(a)(iii), MCA, applies, the statute in effect when the offenses were committed or the statute as it existed at the time Striplin's sentence was revoked.

¶29 In 2003, the Legislature amended § 46-18-203(7)(a)(iii), MCA, to contain the language as indicated in ¶ 27. *See* 2003 Mont. Laws, chapter 386. The 2003 Legislature also added a new subsection to the statute that provides: "The provisions of this section apply to any offender whose suspended or deferred sentence is subject to revocation regardless of the date of the offender's conviction and regardless of the terms and conditions of the offender's original sentence." Section 46-18-203(9), MCA (2003). In enacting subsection (9), the Legislature included the following retroactivity clause: "[This act] applies retroactively, within the meaning of 1-2-109, to offenders in the custody of or under the supervision of the [DOC] on [the effective date of this act, April 15, 2003]."

¶30 Nevertheless, we determined in *State v. Tracy*, 2005 MT 128, ¶ 16, 327 Mont. 220, 113 P.3d 297, that a person has the right to be sentenced under the statutes which are in effect at the time of the offense, and that imposition of a sentence under statutes not in effect at the time an offense was committed is an *ex post facto* application of the law and therefore unconstitutional. "It is a violation of Article I, Section 10, of the United States Constitution and Article II, Section 31, of the Montana Constitution, to apply a statute enacted subsequent to the time a defendant commits an offense, *which increases a defendant's punishment*." *Tracy*, ¶ 16 (citing *State v. Suiste*, 261 Mont. 251, 253, 862 P.2d 399, 400 (1993)) (emphasis added).

10

¶31 The statute in effect in 2002 when Striplin committed the offenses for which she was convicted contains substantially the same language as the statute in effect when Tracy committed his offenses in 1996:

> If the judge finds that the offender has violated the terms and conditions of the suspended or deferred sentence, the judge may:
>
> . . .
>
> (iii) revoke the suspension of sentence and require the offender to serve either the sentence imposed *or any lesser sentence* . . . .

Section 46-18-203(7)(a), MCA (2001) (emphasis added). We pointed out in *Tracy* that a sentence to the Montana State Prison

> *is not the same sentence, or a lesser sentence*, than a commitment to DOC for placement in an appropriate facility or program. A person committed to DOC for an appropriate placement is not necessarily incarcerated in a detention facility.

*Tracy*, ¶ 18 (emphasis added). Consequently, we concluded in *Tracy* that even though the sentence reimposed by the court in that case did not include a longer term than the original DOC commitment, it did impose an additional, more burdensome, condition requiring Tracy to go to prison. Thus, we held that the application of the 2003 version of § 46-18-203, MCA, to Tracy was an *ex post facto* application of the law which could not stand constitutional muster, and we vacated Tracy's sentence. *Tracy*, ¶ 20.

¶32 In the case *sub judice*, had the District Court *continued* Striplin's suspended sentence pursuant to § 46-18-203(7)(a)(ii), MCA (2001), the court could have added the condition that Striplin spend thirty days in the Ravalli County Detention Center. However, because the court *revoked* Striplin's suspended sentence under § 46-18-203(7)(a)(iii), MCA (2001), the addition of a condition requiring Striplin to

spend thirty days in the Ravalli County Detention Center was an additional, more burdensome, condition, and the District Court had no authority to impose it. *See Tracy*, ¶ 20. Accordingly, we reverse the District Court's March 13, 2008 judgment to that narrow extent and we remand this case with instructions that the court strike that condition.

¶33    Affirmed in part, reversed in part, and remanded with instructions.


/S/ JAMES C. NELSON


We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE